A96A0631. HULSINGER v. THE STATE.
(470 SE2d 809)

RUFFIN, Judge.

Chester Hulsinger appeals the trial court's denial of his motion to suppress the results of an Intoximeter test on the ground that the arresting officer failed to provide an independent blood test under OCGA § 40-6-392 (a) (3). For reasons which follow, we affirm.

At the hearing on the motion to suppress, the arresting officer testified that after Hulsinger's arrest and agreement to undergo a breath test at the police station, he stated that he wanted a blood test. The officer then furnished Hulsinger a telephone and telephone book and assisted him in finding the telephone number for the Houston County Medical Center. Hulsinger called the hospital and arranged for a blood test. The officer took Hulsinger to the hospital where a nurse drew his blood and gave the blood specimen back to him. According to the officer, the nurse told Hulsinger that having the blood tested was his responsibility and that he would have to get

a lawyer to do so. When Hulsinger asked the officer how he could get the blood tested, the officer indicated that he had no idea, but also suggested that Hulsinger contact a lawyer or his personal physician. Hulsinger flatly rejected the officer's offer to store the sample in the police department evidence locker and to submit the sample for testing by the State Crime Lab.

The evidence further shows that the officer never asked Hulsinger if he wanted to be taken anywhere else for testing. The officer testified that he was unaware of any other places in Warner Robins that could have drawn and tested Hulsinger's blood at 2:00 a.m. He also admitted on cross-examination that from time to time he had arrested other persons and transported them to other cities and counties to be jailed, but when asked whether he could have taken Hulsinger elsewhere to have his blood tested, the officer indicated that he was not obligated to take Hulsinger to have his blood tested. His duty was "just to make sure he gets the blood drawn."

" 'In reviewing a trial court's decision on a motion to suppress . . ., our responsibility is to ensure that there was a substantial basis for the decision. In so doing, we may consider all relevant evidence of record, wherever located, including evidence introduced at a suppression hearing and that introduced at trial; we construe the evidence most favorably to uphold the findings and judgment, and must adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. Further, since the trial court sits as the trier of facts, its findings will not be disturbed if there is any evidence to support them.' . . . [Cits.]" (Emphasis omitted.) *State v. Brodie*, 216 Ga. App. 198, 199 (1) (c) (453 SE2d 786) (1995).

" 'OCGA § 40-6-392 (a) (3) allows one accused of driving under the influence of alcoholic beverages the right to have a chemical analysis of his blood and urine by a qualified person of his own choosing, and there is a corresponding duty on the part of law enforcement officers not to refuse or fail to allow the accused to exercise that right. (Cit.)' [Cit.] If an individual requests an independent test but is unable to obtain it, the results of the State-administered test cannot be used by the State as evidence against him unless the failure to obtain the test is justified. [Cit.] 'It is incumbent on the trial court to determine whether the failure or inability to obtain the additional test is justified. In making that determination, the trial court must decide if, under the totality of the circumstances, the officer made a reasonable effort to accommodate the accused who seeks an independent test.' [Cit.]" *State v. Button*, 206 Ga. App. 673, 674 (426 SE2d 194) (1992).

This case is factually similar to *Button* because in both cases the officer took the accused to a hospital where his blood was drawn, no blood-alcohol test was performed, and the officer did not take the

accused elsewhere for testing. In *Button*, we agreed with the trial court that the officer did not fulfill his duty to accommodate the accused by simply taking him to a hospital where his blood was drawn but no blood test was performed. However, unlike *Button*, the trial court in this case denied the motion to suppress, apparently finding that the officer made a reasonable effort to accommodate Hulsinger in his attempt to obtain an independent blood test.

As we examine the evidence supporting the trial court's finding, we note at the outset that the officer was mistaken in his belief that his duty was simply to assist Hulsinger in getting his blood drawn. Once an individual requests an independent test, the officer's concomitant duty to accommodate arises and continues until the accused obtains an admissible test or until it is determined that, despite reasonable efforts, such a test cannot be obtained. Id. at 675. Even so, the evidence in the present case showed that the officer was unaware of anyone who could perform a blood test in Warner Robins at 2:00 a.m. He suggested that Hulsinger contact an attorney or his personal physician and offered to store the sample in the police evidence locker and to submit the sample for testing by the State Crime Lab. Although none of these efforts guaranteed him an admissible blood test, Hulsinger did not produce evidence of any reasonable means by which a blood test could have been performed at the time he made his request.

Therefore, because we are bound to construe the evidence most favorably to uphold the trial court's findings and judgment, we have no choice but to conclude that under the totality of circumstances, the officer's efforts were reasonable, and the trial court did not abuse its discretion in denying Hulsinger's motion to suppress.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED MAY 3, 1996.

*Gregory W. Holt, Laurens C. Lee, Rodney E. Davis*, for appellant.
*Robert E. Turner, Solicitor, Cynthia T. Adams, Assistant Solicitor*, for appellee.

