## A01A2175. HENDRIX v. THE STATE.
(564 SE2d 1)

RUFFIN, Judge.

Following a bench trial, the court found Gerald Lee Hendrix guilty of driving under the influence of alcohol. In his sole enumeration of error on appeal, Hendrix argues that the trial court erred in denying his motion to suppress the results of his breath test. According to Hendrix, the court should have suppressed the test results because the arresting officer acted unreasonably in failing to take Hendrix to the facility of his choice for an independent blood test. For reasons that follow, we affirm.

The relevant facts demonstrate that on October 17, 1999, Officer Greg Falls of the Carrollton Police Department saw a car driven by Hendrix weaving on the road. Falls stopped Hendrix and made him perform several field sobriety tests, which Hendrix failed. Falls then read Hendrix his implied consent rights, informing him that after submitting to the breath test, he was "entitled to additional chemical tests of [his] blood, breath, urine, or other bodily substances at [his] own expense and from qualified personnel of [his] own choosing."

After Hendrix submitted to the breath test, which showed that his blood alcohol content was above the legal limit, he asked to be taken to Newnan Hospital for an independent blood test. Falls refused to take Hendrix to that hospital because it is 25 to 30 miles away from Carrollton and outside of his jurisdiction.[1] Evidently, the Carrollton Police Department has a policy of taking suspects only to local testing facilities. Accordingly, Falls told Hendrix that he would take him to Tanner Medical Center or any other local facility. Hendrix declined to go to Tanner Medical Center, asserting that he had "had a past bad experience with Tanner." Falls did not recall Hendrix giving a reason for his refusal to go to Tanner Medical Center. Nevertheless, Falls asked his sergeant if he could drive Hendrix to Newnan

---

[1] Hendrix testified that he thought the hospital was about 20 miles away from Carrollton. Falls, however, testified that a road sign showed that Newnan was 25 miles from the Carrollton city limits. Thus, Falls estimated Newnan Hospital to be approximately 30 miles away. We do not believe that the five-mile difference is substantial, but on appeal, we construe the evidence in the light most favorable to the ruling below. *Cadden v. State*, 213 Ga. App. 291, 292 (444 SE2d 383) (1994).

Hospital, but was not allowed to do so. Evidently, Hendrix never obtained an independent test.

Prior to trial, Hendrix moved to suppress the evidence of the breath test based upon Falls' failure to accommodate his request for an independent blood test. The trial court denied Hendrix's motion, finding that, "under the totality of the circumstances, . . . the arresting police officer made a reasonable effort to accommodate the accused in his request for an independent test." We agree with the trial court.

"OCGA § 40-6-392 (a) (3) allows one accused of driving under the influence of alcoholic beverages the right to have a chemical analysis of his blood and urine by a qualified person of his own choosing."[2] As this Court has recognized, "the *'of his own choosing'* language" is not superfluous.[3] Rather, a suspect is entitled to a meaningful opportunity to choose the testing facility.[4] Nonetheless, if the suspect's choice is unreasonable, a law enforcement officer is justified in refusing to accommodate the request.[5] The trial court is charged with determining whether, under the totality of the circumstances, the suspect's request was reasonable.[6] The factors the trial court may consider in resolving this issue include the following:

> (1) availability of or access to funds or resources to pay for the requested test; (2) a protracted delay in the giving of the test if the officer complies with the accused's requests; (3) availability of police time and other resources; (4) location of [the] requested facilities, e.g., the hospital to which the accused wants to be taken is nearby but in a different jurisdiction; [and] (5) opportunity and ability of accused to make arrangements personally for the testing.[7]

The crux of this appeal is whether Hendrix's request to be taken to Newnan for an independent test was reasonable. According to Falls, he refused to take Hendrix to Newnan because it was too far away and outside of his jurisdiction. We note, however, that the mere fact that the requested facility is in another jurisdiction does not justify an officer's refusal to accommodate a suspect.[8] Rather, the location of the hospital in a different jurisdiction is merely one factor to

---

[2] (Punctuation omitted.) *Pruitt v. State*, 203 Ga. App. 125, 126 (1) (416 SE2d 524) (1992).

[3] *Joel v. State*, 245 Ga. App. 750, 753 (538 SE2d 847) (2000).

[4] See id.

[5] See *Pruitt*, supra.

[6] See *State v. Buffington*, 189 Ga. App. 800, 801-802 (377 SE2d 548) (1989).

[7] Id. at 801.

[8] See *Akin v. State*, 193 Ga. App. 194, 196 (387 SE2d 351) (1989) (Gwinnett County officer not justified in refusing to take suspect to Fulton County facility for testing).

be considered.[9] In this case, the requested facility also was approximately 25 miles away. To accommodate Hendrix's request, therefore, Falls would have been required to drive Hendrix more than 50 miles round trip. Such trip would almost certainly have taken more than an hour.

There is no bright line defining at what point the distance to the requested facility renders the suspect's request unreasonable or when the time factor becomes too onerous. Here, however, the trial court concluded that Falls acted reasonably in refusing to drive Hendrix to Newnan, implicitly finding that the requested facility was too far away. And, in reviewing such conclusion, we view the evidence in the light most favorable to support the trial court's ruling.[10] Given that significant time and distance would have been involved in driving Hendrix to Newnan — two factors a trial court may consider — there is some evidence supporting the trial court's ruling. "As there is evidence supporting the ruling of the trial court, it will not be reversed."[11]

Moreover, this is not a case where the arresting officer impeded the suspect in his attempt to secure independent testing or where department policy limited the suspect to a single testing facility.[12] To the contrary, Falls told Hendrix that, although he was unable to take him to Newnan, he would take him to Tanner Medical Center or *any other* local facility. Accordingly, under the totality of the circumstances, Hendrix was given a meaningful opportunity to obtain independent testing, and the trial court did not err in denying his motion to suppress.[13]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED DECEMBER 10, 2001 —
RECONSIDERATION DENIED APRIL 10, 2002.

*Allen M. Trapp, Jr.*, for appellant.
*Stephen J. Tuggle, Solicitor-General*, for appellee.

---

[9] See *Buffington*, supra.
[10] See *Cadden*, supra.
[11] *Thornhill v. State*, 202 Ga. App. 826, 827 (2) (415 SE2d 473) (1992).
[12] Compare *Buffington*, supra (officer refused to let suspect talk to medical personnel or contact family members to arrange payment for test); *State v. Hughes*, 181 Ga. App. 464 (352 SE2d 643) (1987) (department policy to take suspect to nearest hospital inconsistent with statute and thus not reasonable accommodation).
[13] See id.; *Pruitt*, supra.