A03A0946. COLE v. THE STATE.
(587 SE2d 314)

RUFFIN, Presiding Judge.

On July 9, 2002, the State charged Don Cole with driving under the influence of alcohol. Cole subsequently moved to suppress the results of his intoximeter test, arguing that the arresting officer failed to provide an independent blood test under OCGA § 40-6-392 (a) (3) and that the arresting officer failed to use reasonable efforts to ensure that Cole's blood was both drawn and tested. The trial court denied Cole's motion, and we granted Cole's application for interlocutory appeal. For reasons that follow, we reverse.

In reviewing a trial court's decision on a motion to suppress, our responsibility is to ensure that there was a substantial basis for its decision.[1] Since the trial court sits as the trier of facts, its findings will not be disturbed if there is any evidence to support them.[2]

---

[1] *State v. Brodie*, 216 Ga. App. 198, 199 (1) (c) (453 SE2d 786) (1995).
[2] Id.

At the hearing on Cole's motion to suppress, the arresting officer testified that he stopped Cole in his vehicle on Memorial Day following a complaint from a Department of Natural Resources employee that Cole had littered the grounds near the Houston Lake dam. The officer noted that Cole appeared to be intoxicated. After administering several field sobriety tests to determine Cole's level of impairment, the officer arrested Cole for driving under the influence and advised him of his rights, including his right to an independent blood test. Cole requested an independent blood test, and the officer took Cole to the Houston Medical Center, the nearest hospital center. After the emergency room personnel drew blood from Cole at approximately 10:00 p.m., they advised him to take the sample to the lab. The arresting officer accompanied Cole to the lab, but the lab was closed due to the Memorial Day holiday. The officer testified that he was aware of no other place that would be open to test the blood at that time; however, he also testified that there were two other facilities in the county and that he made no attempt to contact these two other facilities to determine whether they were in fact closed. When the officer and Cole returned to the jail, the officer gave the blood to jail personnel so that it could be placed in a refrigerator and held for Cole until his release on bond. The officer did not offer to take Cole to another facility.

After hearing this testimony and argument of counsel, the trial court denied Cole's motion to suppress, stating that the officer did everything within his power to accommodate Cole in having the independent test completed. We disagree.

OCGA § 40-6-392 (a) (3) gives one accused of driving under the influence of alcoholic beverages the right to have an independent chemical analysis of his blood performed by a qualified person of his own choosing.[3] Law enforcement officers may not deprive the accused of that right.[4] If an individual requests, but cannot obtain an independent test, the results of a state-administered test are not admissible in evidence "unless the failure to obtain the [independent] test is justified."[5] It is incumbent on the trial court to determine whether the failure or inability to obtain the independent test is justified.[6] "In making that determination, the trial court must decide if, under the totality of the circumstances, the officer made a reasonable effort to accommodate the accused who seeks an independent test."[7]

On appeal, the State argues that the failure to obtain an inde-

---

[3] OCGA § 40-6-392 (a) (3).
[4] See *State v. Buffington*, 189 Ga. App. 800, 801 (377 SE2d 548) (1989).
[5] *State v. Button*, 206 Ga. App. 673, 674 (426 SE2d 194) (1992).
[6] *Buffington*, supra at 801.
[7] Id. at 801-802.

pendent test in this case was justified, citing *Hulsinger v. State*.[8] In *Hulsinger*, the defendant invoked his right to an independent test, and the arresting officer took him to a hospital.[9] The nurse drew defendant's blood, gave the specimen back to him, and told the defendant that getting the blood tested was his responsibility. When the defendant asked the officer how he could get the blood tested, the officer stated that he did not know, but he suggested that the defendant contact a lawyer or his personal physician. He also offered to submit the sample for testing in the State's crime lab. Given these circumstances, this Court found that the trial court did not err in denying the defendant's motion to suppress because the officer had suggested several alternatives to the defendant, including storage of the blood and sampling by the State's crime lab.[10]

The evidence shows that the arresting officer here, as in *Hulsinger*, was unaware of any place that would be open to test the blood given the holiday and the time. However, in the present case, the officer stated that he did not attempt to contact either of the other two possible facilities he knew of in the area, apparently based on his assumption that they would also be closed. And the record shows that the officer did not suggest any other testing alternatives, such as calling Cole's personal physician or his lawyer, or submitting the sample to the State's crime lab.

Once Cole invoked his right to an independent test, the officer had a duty to make reasonable efforts to accommodate that request.[11] We cannot find the officer's efforts here reasonable. Although we recognize the potential difficulty in locating a testing facility on a holiday evening, the officer did not explore any alternative testing measures after discovering that the Houston Medical Center was closed. And, as we have noted, "a blood sample is not the same as a legally admissible blood test, regardless of whether the blood sample could conceivably have been later used to obtain an independent test."[12] Accordingly, the trial court erred in denying Cole's motion to suppress.

*Judgment reversed. Smith, C. J., and Miller, J., concur.*

DECIDED SEPTEMBER 16, 2003.

*Daniel K. Franck*, for appellant.

---

[8] 221 Ga. App. 274 (470 SE2d 809) (1996).
[9] Id. at 274.
[10] Id. at 276.
[11] See *Buffington*, supra at 801.
[12] *Button*, supra at 675.

*A. Robert Tawse, Jr., Solicitor-General, Arthur J. Creque, Assistant Solicitor-General*, for appellee.