A04A0264. SHEEHAN v. THE STATE.
(598 SE2d 873)

SMITH, Chief Judge.

Following a bench trial on stipulated facts, Andrew Sheehan was convicted of DUI and driving with a suspended license. Sheehan appeals, contending that he was denied an independent blood test and that the trial court therefore erred in denying his motion to suppress the results of his State-administered breath test.

Finding no error, we affirm.

During the hearing on Sheehan's motion to suppress, Officer Brad Milstein of the Griffin Police Department testified that he made a traffic stop on a vehicle driven by Sheehan at approximately 1:15

---

a.m. After observing Sheehan's demeanor, detecting the odor of alcohol about Sheehan, and performing field sobriety tests on Sheehan, Milstein placed him under arrest for DUI.[1] Milstein read Sheehan his implied consent rights, and Sheehan agreed to a State-administered breath test. Milstein transported Sheehan to the Griffin Police Department and administered the test, after which Sheehan requested a blood test. Milstein "told him that was fine" and asked Sheehan if "Spalding Regional was alright, and he said yes."

Milstein took Sheehan to Spalding Regional Hospital, and he testified that when they "went in the waiting room, the receptionist advised us that it was going to be $125 cash." Sheehan told Milstein that he had a checkbook but not cash or an ATM card, and the receptionist informed them that she would not "accept checks." Milstein testified that Sheehan told him that "he had the money at his shop" and that, based on this, he planned to drive Sheehan to his place of business so that he could obtain the money for the test. Before they left the hospital parking lot, however, Sheehan told Milstein that he did *not* have cash at his shop to pay for the test but that he had a checkbook there and wanted to get a check cashed. Milstein testified that at that point he "advised him that there was no place at two o'clock in the morning that was going to cash his check. And at that point, he said he had no other way to get any money. And . . . I went ahead and transported him to the Spalding County Jail."

Terri Watts, an employee in the business office at Spalding Regional Hospital, testified that the hospital has a policy of accepting personal checks for blood tests. She also acknowledged, however, that the business office is an off-site facility, open from 8:00 a.m. until 5:00 p.m., and that she had no direct knowledge of "what goes on at the hospital." She also agreed that she did not know whether a cashier was present at 2:00 a.m. The trial court denied Sheehan's motion to suppress the results of the State-administered test, stating, "I think the officers did as much as they could do. It's not incumbent on them to question personnel as to policy when they're told what it is." On appeal, Sheehan argues that Milstein failed to make a reasonable effort to accommodate his request for an independent blood test and that the results of his State-administered test consequently should have been suppressed.

Under OCGA § 40-6-392 (a) (3), a person accused of DUI has "the right to have a chemical analysis of his blood and urine by a qualified person of his own choosing." *Cadden v. State*, 213 Ga. App. 291, 292

---

[1] During Milstein's investigation, he learned from Sheehan that he did not have a driver's license. Sheehan's conviction for driving with a suspended license is not a subject of this appeal.

(444 SE2d 383) (1994). Law enforcement officers have a "corresponding duty . . . not to refuse or fail to allow the accused to exercise that right. While it is not the officer's duty to insure the performance of an independent test, he cannot prevent a defendant from exercising his right to such a test." Id. OCGA § 40-6-392 (a) (3) further provides that "[t]he justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer." In deciding whether the failure to obtain the additional test is justified, a "trial court must decide if, under the totality of the circumstances, the officer made a reasonable effort to accommodate the accused who seeks an independent test." *Cadden*, supra at 292. See also *Hulsinger v. State*, 221 Ga. App. 274, 275 (470 SE2d 809) (1996).

When Sheehan told Milstein that he wanted an independent test, Milstein readily took him to a local hospital. And upon learning that the hospital receptionist would not accept a check for the test, when Sheehan told Milstein he had cash at his business, Milstein again acted quickly on Sheehan's behalf and began making preparations to carry Sheehan to the business to obtain the cash. Only when Sheehan informed Milstein in the hospital parking lot that he had only a checkbook at his business *and that he had no other means of obtaining cash* did Milstein cease his efforts to assist Sheehan in obtaining an independent test. Milstein testified that he knew of no place that would cash a check at 2:00 a.m., and nothing in the record indicates that this belief was unreasonable.

Short of Milstein paying for the test himself, which of course is not required of a police officer, we agree with the trial court that Milstein could have done little else to accommodate Sheehan's request to obtain an additional test. "In reviewing a trial court's decision on a motion to suppress, our responsibility is to ensure that there was a substantial basis for the decision." (Citation and punctuation omitted.) *Hulsinger*, supra at 275. So reviewing the evidence, we conclude that ample basis existed from which the trial court could conclude that Milstein made a reasonable effort to assist Sheehan in obtaining the test. The trial court did not err in denying his motion to suppress.

*Cole v. State*, 263 Ga. App. 222 (587 SE2d 314) (2003), on which Sheehan primarily relies to argue that his motion should have been granted, is not controlling here. In *Cole*, the arresting officer transported the defendant to a hospital, where blood was drawn but not tested, because the incident occurred on a holiday. The officer was aware of two other medical facilities but did not contact them to determine whether they were open. Id. at 223. Here, the issue was whether Sheehan could pay for the test in the first instance, and Milstein was unaware of any place that would cash a check at 2:00

a.m. Milstein made himself readily available to assist Sheehan in obtaining the test, and reversal is not warranted.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED APRIL 21, 2004.

*Virgil L. Brown & Associates, Larkin M. Lee,* for appellant.
*Griffin E. Howell III, Solicitor-General,* for appellee.