## A04A1545. McGINN v. THE STATE.
(602 SE2d 209)

ELDRIDGE, Judge.

A Floyd County jury found James J. McGinn guilty of underage DUI (excessive BAC[1]). On appeal, McGinn's sole claim of error is that the trial court erred in denying his motion in limine premised upon the arresting officer's failure to provide him with an independent chemical test of his blood after he requested one. We agree and reverse.

The facts of this case do not appear to be in dispute. Floyd County Police Officer T. Raykovics was dispatched to investigate a vehicular wreck on Georgia Highway 101 involving a beige Toyota Camry that had gone into a ditch; when he arrived, he saw two young males removing a case of beer from the trunk of the Camry. McGinn was behind the driver's wheel of the vehicle; another male was in the passenger side of the front seat. The officer saw what he determined to be a rolling paper on the seat of the Camry. Officer Raykovics noted that the driver and the three passengers "appeared to be young. I couldn't determine the age at the time."

The officer approached McGinn and smelled a strong odor of an alcoholic beverage emanating from his person. McGinn's eyes were bloodshot, and his speech was slurred. Officer Raykovics began to

---

[12] *Ginn v. State*, 251 Ga. App. 159, 161 (2) (553 SE2d 839) (2001).
[1] Blood Alcohol Content.

question him about the beer in the trunk and the accident in general. According to the officer, it was at this point that McGinn stated that "he knew somewhat of the law and that he wanted to have a blood test"; "he did say that he knew he had a right to a blood test." McGinn had neither been placed under arrest nor read the implied consent warnings. Officer Raykovics informed McGinn that if, pursuant to investigation, it was suspected that drugs were involved, the officer himself would seek a blood test.

Officer Raykovics then requested that McGinn blow into an alco-sensor, which registered positive for alcohol. The officer placed McGinn under arrest for driving under the influence of alcohol and read him the implied consent warnings for those under age 21. The officer requested a breath test, and McGinn agreed to take one; he was transported to the county police station. While Officer Raykovics was entering identifying information into the intoxilyzer, McGinn again brought up securing a blood test; the officer testified that McGinn

> wanted to know if a blood test conducted last week by an employer could be used, and I advised him that could not be used, and then he mentioned if — when he returned back to Atlanta if he could have a blood test done at that time if that could be used, and I advised him that could not be used.

A subsequent intoxilyzer breath test showed McGinn to have a 0.119 BAC. An independent chemical test of McGinn's blood was not conducted. *Held*:

OCGA § 40-6-392 (a) (3) provides that a person who is accused of DUI and who undergoes a chemical test at the request of a law enforcement officer has the right to have a qualified person of his own choosing administer an additional test. Law enforcement officers have a corresponding duty not to refuse or fail to allow an accused to exercise that right. A trial court must determine whether the failure or inability to obtain the additional test is justified, and in making that determination, the court determines whether, "under the totality of the circumstances, the officer made a reasonable effort to accommodate the accused who seeks an independent test."[2] If an individual requests an independent test but is unable to obtain it, "the results of the State-administered test cannot be used by the State as evidence against him unless the failure to obtain the test is

---

[2] (Citations and punctuation omitted.) *State v. Button*, 206 Ga. App. 673, 674 (426 SE2d 194) (1992).

justified."[3]

A request for an independent chemical test can hardly be more plain than the one made here, where McGinn during the course of the officer's investigation stated that he understood his rights under the law and that "he wanted to have a blood test." Further, the record shows that McGinn re-initiated discussion about an independent blood test while waiting to take the State-administered breath test; certainly upon such re-initiation, it was incumbent upon Officer Raykovics to at least inquire about McGinn's prior unambiguous request and to make an effort to accommodate such request by suggesting reasonable alternatives, as opposed to simply negating McGinn's naive proposals.[4] The officer's failure to do so frustrated McGinn's right to obtain an independent blood test and requires the suppression of the results of the State-administered test.

In denying McGinn's motion in limine, the trial court found determinative that McGinn's request for a blood test was made prior to arrest and the giving of implied consent warnings; however, we find such distinction immaterial under the facts of this case. As we have previously held, what is required is that the record show that an officer was "on notice" that the accused presumably knew of his right to an additional test because he told the officer at the outset that he was aware of his rights and that he wanted a blood test.[5] Implied consent warnings are informational, and if an accused already possesses that information and has requested an independent test, the giving of the warnings themselves cannot become the stumbling block to fulfilling the otherwise unambiguous request. Implied consent warnings ask an accused to submit to a State-administered test; they do not

> ask[ ] the accused whether [he] wants an additional, independent chemical test. And none specifies to the accused any requirements for requesting that test — linguistically, temporally, or otherwise. . . . We therefore cannot place upon an accused the burden of uttering words unspecified, yet more particularized than those uttered here: "I want a blood test."[6]

Our decision in *Church v. State*[7] does not authorize a different result. In *Church*, the accused inquired as to the type of State test

---

[3] Id.

[4] *Cole v. State*, 263 Ga. App. 222, 224 (587 SE2d 314) (2003).

[5] *Ladow v. State*, 256 Ga. App. 726, 728-729 (569 SE2d 572) (2002); *Johnson v. State*, 261 Ga. App. 633, 637 (2) (583 SE2d 489) (2003).

[6] *Ladow v. State*, supra at 728-729.

[7] *Church v. State*, 210 Ga. App. 670, 671 (1) (436 SE2d 809) (1993).

that would be administered if she was arrested; when advised of her right to an independent test, the accused stated, "it won't matter and you know that."[8] The *Church* decision turned on the ambiguity of Church's request, not its timing. Here, McGinn's request for an independent blood test was clearly made on the scene. Officer Raykovics was on notice that an independent blood test had been requested. Follow up and reasonable efforts to accommodate that request were required after the decision to arrest McGinn for DUI was made and McGinn re-initiated discussion of his ability to obtain an independent blood test. The trial court's contrary conclusion was error.

*Judgment reversed. Ruffin, P. J., and Adams, J., concur.*

DECIDED JULY 9, 2004.

*Dennis J. Murphy*, for appellant.

*Leigh E. Patterson, District Attorney, Charles S. Cox, Assistant District Attorney*, for appellee.